```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
                                          :
DAVID W. COX,                             :
     Plaintiff,                           :
                                          :
     v.                                   :    No. 2:05-CV-180
                                          :
FLETCHER ALLEN HEALTH CARE,               :
     Defendant.                           :
                                          :
```

## OPINION AND ORDER

Plaintiff David Cox initiated this action to compel his former employer, Fletcher Allen Health Care, to pay the legal expenses for his defense against pending criminal charges. For the reasons below, Cox's motion for a preliminary injunction is DENIED.

### I. FACTUAL BACKGROUND

Fletcher Allen is a nonprofit health care corporation based in Burlington, Vermont. Cox served as Fletcher Allen's Chief Financial Officer between 1997 and 2001. During that time, he was involved in planning the Renaissance Project, a new health care research facility adjacent to Fletcher Allen's main hospital in Burlington.

In 2002, the U.S. Department of Justice began investigating allegations that Cox and other members of Fletcher Allen's senior management had violated government regulations and misled Vermont state officials as to the cost and the financing of the Renaissance Project. In July 2002, upon learning of the ongoing

investigation, Fletcher Allen's board of trustees ("the Board") formed an ad hoc committee to carry out its own investigation of those same allegations.  After conducting extensive interviews and research, the ad hoc committee issued a report on November 15, 2002, in which it concluded that Fletcher Allen's senior management team had engaged in misleading and deceptive conduct.  In particular, it concluded, members of the management team had failed to make required disclosures and had deceived state officials and the Board as to the true cost of the Renaissance Project.  The report did not attempt to assign culpability to specific individuals; however, Cox was a member of the team that had allegedly engaged in wrongful activity.

On July 1, 2004, Cox contacted Fletcher Allen to request an advance of his legal expenses if and when criminal charges were brought against him.  Fletcher Allen's corporate bylaws ("the Bylaws") provide for indemnification of a current or former officer or employee's legal expenses if the person has been made a party to a proceeding because of his or her position at Fletcher Allen.  The Bylaws also provide for advance payment of anticipated legal expenses before the final disposition of the proceeding.  To qualify for such an advance, the person must meet certain criteria set forth in the Bylaws.

The Board considered Cox's request for an advance at its August 10, 2004 meeting.  It voted to deny the request based on

two grounds: first, the Board concluded that he had not met the criteria set forth in the Bylaws; second, it concluded that indemnification was not permissible under Vermont law.

The Department of Justice investigation ultimately led to criminal charges against several former Fletcher Allen officers, including a five-count indictment filed against Cox on February 3, 2005, in this Court. Following his indictment, Cox engaged legal counsel and pled not guilty to all counts. He subsequently initiated this action to compel Fletcher Allen to reimburse him for the legal costs he had already incurred and to provide an advance of his anticipated future costs as he prepares for trial. Cox now seeks a preliminary injunction forcing Fletcher Allen to pay the requested expenses. The Court held a hearing on Cox's motion on September 15, 2005, and now issues its decision.

## II. STANDARD OF LAW

In general, a party seeking a preliminary injunction must demonstrate (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. Moore v. Consol. Edison Co. of New York, 409 F.3d 506, 510 (2d Cir. 2005).

III. DISCUSSION

A. Irreparable Harm

The first prong of the preliminary injunction test requires Cox to show that he will be irreparably harmed if the Court does not issue an injunction. This element is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). To establish irreparable harm, a party seeking a preliminary injunction must demonstrate "a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." Id. The harm "must be shown to be actual and imminent, not remote or speculative." Id.

Cox argues that if his legal costs are not advanced, his defense will be compromised and he will suffer an increased risk of conviction in the pending criminal proceeding. The likelihood of an adverse verdict, he argues, constitutes an irreparable injury that cannot be rectified by a subsequent award of money damages.

In principle, the withholding of costs necessary to an adequate criminal defense can constitute irreparable harm. See, e.g., Ridder v. Cityfed Fin. Corp., 47 F.3d 85, 87 (3d Cir. 1995) (finding that applicants had demonstrated that irreparable harm would result if legal fees were not advanced); In re Adelphia Commc'ns Corp., 323 B.R. 345, 374 (Bankr. S.D.N.Y. 2005) (finding

that "a financial inability to defend oneself has serious consequences, and is irreparable"). A criminal conviction can result not only in legal penalties such as imprisonment or loss of civic rights and privileges, but also in harm to one's reputation and personal relationships. These consequences would be difficult or impossible to redress with an award of money damages.[1]

However, the party seeking an injunction must provide more than a bare assertion that the requested legal fees are necessary to an adequate defense. When a party's claim of irreparable harm relates to his or her financial condition, courts have generally required evidence of that condition. For example, in <u>Dover Steel Co. v. Hartford Accident and Indemnity Co.</u>, 806 F. Supp. 63, 66 (E.D. Pa. 1992), the plaintiff argued that withholding of legal fees would irreparably injure it by forcing it into bankruptcy. The court held that "vague, general testimony relating to [plaintiff's] current financial condition" was insufficient to

---

[1] Fletcher Allen argues that Cox's motion "seems to be about nothing other than money" and cites <u>Mongelli v. Chicago Insurance Co.</u>, No. 99 CV 8149, 2002 WL 32096578, at *1 (E.D.N.Y. Jan. 15, 2002) for the proposition that failure to pay defense costs does not necessarily represent an irreparable injury. However, the party seeking an injunction in <u>Mongelli</u> was the defendant in a civil action, not a criminal proceeding. The court concluded that in the event of an adverse judgment in the civil case, any harm would have been purely monetary, and thus a later action for damages would have been an adequate remedy. <u>See</u> <u>id.</u> By contrast, as explained above, a criminal defendant such as Cox faces consequences that could not be redressed by a later monetary award.

support its claim. Instead, it held, the plaintiff should have introduced "financial statements, tax returns, general ledgers, or other documentary evidence of [its] financial health." Id.

Cox cites In re Worldcom, Inc. Securities Litigation, 354 F. Supp. 2d 455 (S.D.N.Y. 2005) to support his contention that he need not provide detailed evidence of his financial condition. In Worldcom, a former director sought an injunction compelling an insurer to pay for his legal costs in ongoing civil litigation. The court found that the director had demonstrated irreparable harm even though he had not provided documentary evidence of his inability to afford counsel. The court stated:

> Continental and Twin City argue that Roberts has failed show irreparable injury because he has not shown that he is unable to retain counsel from his own funds. The issues here surmount whether an individual director has or does not have sufficient funds to pay counsel when confronted with litigation stemming from service as a corporate director. In some cases the litigation will be minor; here it is massive. In some cases a director will have great personal wealth; in other cases she will not. The issue here is whether every director protected by a policy equivalent to National Union's is entitled to ongoing payment of defense costs until there is a judicial determination that that right does not exist. Under the terms of the National Union policy, and for the reasons set forth here, the answer is yes.

Worldcom, 354 F. Supp. 2d at 469-70.

As the discussion in Worldcom makes clear, the court's irreparable harm inquiry in that case was influenced by policy considerations specific to the directors and officers insurance context. The court apparently felt that the societal interest in ensuring prompt payment of insurance claims was so important that

6

an insurer should be deemed to have caused irreparable harm simply by refusing to pay a claim, even without a showing of financial need by the particular officer claiming advancement of defense costs.  This Court, however, declines to extend the <u>Worldcom</u> reasoning to the context of corporate indemnification. While there is certainly a societal interest in enforcing corporate indemnification bylaws, that interest does not relieve Cox of the need to demonstrate that he personally will be irreparably harmed by Fletcher Allen's failure to advance his legal costs.

Because the current state of the record does not establish that Cox will be denied an adequate defense absent an advance, the Court concludes that Cox has not satisfied the irreparable harm prong of the preliminary injunction test.  Following the hearing on September 15, 2004, Cox filed a motion to supplement the record by submitting a signed affidavit containing details of his financial condition.  However, in light of the Court's conclusion below that Cox has failed to satisfy the second prong of the test, he would not be entitled to an injunction even if his affidavit made a showing of irreparable harm.  For this reason, the Court finds it unnecessary to rule on Cox's motion to supplement the record.

B. <u>Likelihood of Success on the Merits/Sufficiently Serious Questions</u>

The second prong of the preliminary injunction test requires Cox to show either (a) that he is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in Cox's favor.

Cox argues that he is likely to prevail on the merits of his claim for an advance because he is entitled to it under the Bylaws.  Fletcher Allen contends that (a) the Bylaws do not entitle Cox to an advance; (b) if the Bylaws did entitle him to an advance, they would violate Vermont law; and (c) Cox forfeited any right to an advance by signing a release of claims against Fletcher Allen upon termination of his employment.

*1. Cox's entitlement to an advance under the Bylaws*

Cox argues that the Bylaws require Fletcher Allen to provide an advance of his legal expenses.  Section 8.2 requires the Board to approve an advance if three conditions are met:

> The corporation shall pay or reimburse the reasonable expenses incurred by such Eligible Person who is a party to a proceeding in advance of final disposition of the proceeding if (i) such Eligible Person furnishes the corporation a written affirmation of his good faith belief that he or she has not engaged in conduct described in Subsection 8.1(b) above; (ii) the Eligible Person furnishes the corporation a written undertaking, executed personally or on his or her behalf, to repay the advance if it is ultimately determined that he or she did not meet the applicable standard of conduct (which undertaking must be an unlimited general obligation of the Eligible Person, but need not be secured and may be accepted without

8

>  reference to financial ability to make repayment); and
>  (iii) a determination is made that the facts then known to
>  those making the determination do not preclude
>  indemnification under Subsection 8.1(b) above or Section
>  8.3 below.[2]

Bylaws § 8.2.

The Board rejected Cox's July 1, 2004 request for an advance after determining, pursuant to Subsection 8.2(iii), that the facts then known to it precluded indemnification under Subsection 8.1(b).[3] That Subsection provides:

> The corporation shall not indemnify an Eligible Person
> under this Section 8.1 if (i) an action, suit or
> proceeding shall be prosecuted against such person ... and
> it shall be finally adjudged in said action, suit or
> proceeding that such person is liable for gross negligence
> or such person has knowingly and willfully acted in a
> manner contrary to the best interests of the
> corporation[.]

Bylaws § 8.1(b).

The parties offer conflicting interpretations as to how the Board may determine that indemnification is precluded under Subsection 8.1(b). Fletcher Allen argues the Board may make such

---

[2] The "determination" referred to in Section 8.2 may be made by the Board of Trustees, by a committee thereof, by special legal counsel selected by the Board or its committee, or by a majority of the Class A Members. See Bylaws §§ 8.2, 8.1(a).

[3] Fletcher Allen also argues that Cox is not entitled to an advance because he has not yet furnished Fletcher Allen with the affirmations required by Subsections 8.2(i) and (ii). Cox has indicated that he will do so promptly if and when the Court determines that he has met the other requirements set forth in the Bylaws. See Motion for Preliminary Injunction at 5 n.3. Given the Court's determination below that Cox has not met the other requirements, it is unnecessary to consider the effect of his failure to submit the affirmations.

a determination if it concludes that Cox failed to meet the underlying standard of conduct referred to in Subsection 8.1(b); in other words, if it finds, in its own opinion, that he committed gross negligence or knowingly and willfully acted in a manner contrary to the best interests of the corporation. Because the Board made such a determination, Fletcher Allen argues, Cox is not entitled to an advance.

Cox, by contrast, argues that the Board may not reach such a conclusion on its own.  Instead, he contends, Subsection 8.1(b) requires the Board to approve an advance unless there has been an external adjudication that he was grossly negligent or that he knowingly and willfully acted contrary to the corporation's interests.  Because there has been no such adjudication in Cox's case, he argues that the Board erred in denying him an advance.

The Bylaws are not a model of clarity.  Because Subsection 8.1(b) does refer to an adjudication, there is some support for Cox's position that an adjudication is required before the Board can deny an advance.  On the other hand, Subsection 8.2(iii) can easily be read as merely referring to the underlying standard of conduct in Subsection 8.1(b).

Of the parties' two conflicting interpretations of the Bylaws, however, only Fletcher Allen's is reasonable.  Because the purpose of an advance is to furnish legal costs *before* a final adjudication, Cox's suggestion that the Board may deny an advance only if there has already been a final adjudication would

lead to an absurd result.  Following Cox's interpretation, an advance would be automatic once the person seeking an advance furnished the affirmations required by Subsections 8.2(i) and (ii).  For this reason, Subsection 8.2(iii) would never serve to deny advancement and hence would be entirely superfluous.[4]

It is a fundamental rule of construction that contracts must be construed in a manner that gives meaning to all of their provisions.  Blodgett Supply Co. v. P.F. Jurgs and Co., 617 A.2d 123, 128 (Vt. 1992); Vermont State Colleges Faculty Federation v. Vermont State Colleges, 446 A.2d 347, 349 (Vt. 1982).  For this reason, Cox's interpretation of the Bylaws must be rejected.  The only reasonable interpretation is that Subsection 8.2(iii) allows the Board to make its own, independent determination that Cox failed to meet the standard of conduct referenced in Subsection

---

[4] Counsel for Cox argued at the September 15, 2004 hearing that Subsection 8.2(iii) would not be superfluous under Cox's reading of the Bylaws because it could result in denial of an advance if there had been an adjudication in a *separate* proceeding.  This argument is unpersuasive.  Subsection 8.1(b) appears to refer to the adjudication for which indemnification is sought, not to a separate proceeding.  See Bylaws § 8.1(b) ("an action, suit or proceeding shall be prosecuted against such person ... and it shall be finally adjudged in *said action*") (emphasis added).
    Furthermore, it seems unlikely that the Bylaws would direct the Board to consider the outcome of a separate proceeding which might be a poor predictor of the outcome of the proceeding for which the advance is sought.  For example, if Cox had been found liable in a civil suit, that would not necessarily indicate that he would be found guilty in the pending criminal case, in which the government must meet a much higher standard of proof.

8.1(b).  Because the Board made such a determination, Cox is not entitled to an advance.

   *2. The Bylaws under Vermont law*

      i. <u>The applicable law</u>

   Even if Cox's reading of the Bylaws were correct, the advancement provisions would be valid only to the extent that they were consistent with Vermont law.  The applicable statute is Subchapter 5, Chapter 8 of the Vermont Nonprofit Corporations Code, Title 11B V.S.A.  Subsection 8.58(a) of that Title provides:

> A provision treating a corporation's indemnification of or advance for expenses to directors that is contained in its articles of incorporation, bylaws, a resolution of its members or board of directors, or in a contract or otherwise, is valid *only if and to the extent the provision is consistent with this subchapter*.

11B V.S.A. § 8.58(a) (emphasis added).  As explained below, because Cox's interpretation of the Bylaws is inconsistent with the statute, he would not be entitled to an advance even if his reading were correct.

   Restrictions on a nonprofit corporation's ability to advance expenses to a current or former director are set forth in Subsections 8.53(a) and 8.55(a) of the statute.  Subsection 8.53(a) provides that advancement is permissible if:

> (1) the director furnishes the corporation a written affirmation of his or her good faith belief that he or she has met the standard of conduct described in section 8.51 of this title;

12

>   (2) the director furnishes the corporation a written undertaking, executed personally or on the director's behalf, to repay the advance if it is ultimately determined that the director did not meet the standard of conduct; and
>
>   (3) a determination is made that the facts then known to those making the determination would not preclude indemnification under this subchapter.

11B V.S.A. § 8.53(a).  Subsection 8.55(a) provides:

>   Except as provided in section 8.53 of this title, a corporation may not indemnify a director under section 8.51 of this title prior to the final resolution of a proceeding, whether by judgment, order, settlement, conviction, plea, or otherwise, and unless authorized in the specific case after a determination has been made that indemnification of the director is permissible in the circumstances because the director has met the standard of conduct as set forth in section 8.51 of this title.

11B V.S.A. § 8.55(a).  The determination to which the statute refers is to be made by the board of directors, or, if a quorum cannot be obtained, by a committee or by special legal counsel. 11B V.S.A. § 8.55(b).

    The "standard of conduct" referred to in Subsection 8.55(a) is set forth in Section 8.51, which provides that indemnification is permissible if the individual to be indemnified:

>   (1) conducted himself or herself in good faith; and
>
>   (2) reasonably believed:
>
>      (A) in the case of conduct in his or her official capacity with the corporation, that the director's conduct was in its best interests; and
>
>      (B) in all other cases, that his or her conduct was not in opposition to the corporation's best interests; and

>     (3) in the case of any proceeding brought by a
>     governmental entity, the director had no reasonable cause
>     to believe his or her conduct was unlawful, and the
>     director is not finally found to have engaged in a
>     reckless or intentional criminal act.

11B V.S.A. § 8.51(a).

As a careful reading of the statute reveals, the Vermont advancement provisions are similar, but not identical, to the Bylaws. Like the Bylaws, the statute provides that advancement is permissible only if the officer furnishes two affirmations and the board of directors determines that indemnification is not precluded.

The statute is even clearer than the Bylaws, however, in establishing that the board's determination need not rely on the existence of a final adjudication. Under subsection 8.53(a), the board is required to determine whether "the director has met the standard of conduct as set forth in section 8.51." The standard in section 8.51 requires the director to have conducted himself or herself in good faith, reasonably believed that his or her conduct was in the corporation's best interests, had no cause to believe that the conduct was wrongful, and not been finally found to have engaged in a reckless or criminal act. The statute provides that the board must make its own evaluation of the director's conduct against this standard, with no indication that the board may rely on a final adjudication to approve an advance.

In maintaining this requirement that the board make an independent evaluation, the Vermont Legislature has declined to

follow the lead of other states that have streamlined their provisions for advancement.  The corresponding Delaware statute, for example, clearly dispenses with the provision for a determination by the board and permits advancement upon receipt of the officer's promise to repay the advance if it ultimately becomes warranted:

> Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

Del. Code Ann. tit. 8, § 145(e).  Because Vermont has not chosen to adopt this more liberal model of advancement, nonprofit boards in this state still play an important role in determining whether to make an advance.

    ii. <u>Compliance of the Bylaws with Vermont law</u>

As noted above, under Subsection 8.58(a) of the Vermont statute, any bylaw provisions that allow indemnification in a manner inconsistent with the statute are invalid.  In other words, the Bylaws are void to the extent that they are more lenient than the statute in permitting indemnification or advancement.

15

Under Fletcher Allen's interpretation of the Bylaws (which the Court has already concluded is the more reasonable interpretation), the Bylaws are consistent with the law. Subsection 8.55(a) of the statute requires the board to make a determination that the director has abided by the standard of conduct set forth in Subsection 8.51.  Under Fletcher Allen's interpretation, Subsection 8.2(iii) of the Bylaws does just that, requiring the Board to determine that the director did not commit gross negligence or knowingly and willfully act in a manner contrary to the best interests of the corporation.

Cox's interpretation of the Bylaws is more problematic. Under his reading of Subsection 8.2(iii), the Board is relieved of any obligation to scrutinize the director's conduct against standards similar to those in Subsection 8.51 of the statute. Instead, he contends, the Board is to consider only whether or not there has been a final adjudication.  However, as discussed above, since a director will invariably seek an advance only when there has not yet been a final adjudication, Cox's interpretation would effectively compel the automatic granting of an advance once the director filed the two required affirmations.  This is a more lenient standard than the one contemplated by the statute, and it would be impermissible under the law.

For this reason, even if his reading of the Bylaws were correct, Cox would still not be entitled to an advance without a determination by the Board that he had met the requisite standard

16

of conduct. Since the Board has already determined that he failed to meet the standard, Cox cannot prevail. He thus has failed to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits.

> *3. Effect of Cox's release of claims in the August 15, 2001 agreement*

Fletcher Allen also argues that Cox's claim is barred by a release that Cox signed on August 15, 2001, as part of his termination agreement with Fletcher Allen ("the Agreement"). In signing the release, Cox agreed not to sue Fletcher Allen for certain employment-related claims. The relevant provision of the Agreement reads:

> 4.01 <u>Release of Employment Claims:</u> The Employee releases, forever discharges and ... covenant[s] not to sue, FAHC and its affiliates ... with respect to any and all manner of action and actions, cause and causes of action, debts, obligations, contracts, warranties, covenants, liabilities, costs, attorneys' fees, expenses, claims or demands whatsoever ... which the Employee ever had or now has against FAHC or any of the Released Persons as of the effective date of this Agreement for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, suspected or unsuspected, absolute or contingent, mature, direct, derivative, subrogated or assigned, arising out of, in connection with or related to the Employee's employment, the termination of such employment or other involvement with FAHC.

The Agreement makes clear that Cox was not releasing claims that might arise in the future, but only those claims in existence as of August 15, 2001, the effective date of the Agreement. While acknowledging this, Fletcher Allen argues that Cox's right to an advance existed at the time of the Agreement,

even if Cox was unaware of it.

This argument is unavailing. Under Fletcher Allen's bylaws, a claim for advancement does not arise until the commencement of a proceeding. See Bylaws § 8.2 ("The corporation shall pay or reimburse the reasonable expenses incurred by such Eligible Person *who is a party to a proceeding* in advance of final disposition of the proceeding[.]") (emphasis added). Since the proceeding against Cox did not begin until he was indicted on February 3, 2005, his claim for advancement did not exist until that date and cannot have been surrendered by the Agreement. Indeed, Fletcher Allen admits as much by noting in its opposition that if Cox "is wholly successful on the merits, he may well be entitled to mandatory indemnifications of his reasonable expenses[.]" Opp. at 18. Presumably, if Cox had surrendered his claim to an advance by signing the Agreement, he would have surrendered his right to indemnification as well.

For these reasons, Cox did not release his claim to an advance by signing the Agreement. However, because of the Board's determination that he did not meet the necessary standard of conduct, he is ineligible for an advance on other grounds. Accordingly, he has demonstrated neither a likelihood of success on the merits nor sufficiently serious questions going to the merits, and his request for a preliminary injunction must fail.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED.

Dated at Burlington, Vermont this 5th day of October, 2005.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge